## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  ALECIA TEACHER, )<br>)<br>Plaintiff, )<br>)<br>v.    )<br>)<br>1.  THE STATE OF OKLAHOMA )<br>ex rel. OKLAHOMA DEPARTMENT )<br>OF HUMAN SERVICES, and )<br>2.  CALVIN KELLEY, in his individual )<br>capacity as Region III Deputy )<br>Director, )<br>)<br>Defendants. ) | CIV-15-965-L<br><br><br><br><br><br><br><br><br><br>**Jury Trial Demanded**<br>**Attorney Lien Claimed** |

### COMPLAINT

**COMES NOW THE PLAINTIFF**, Alecia Teacher, and for her causes of action against the Defendants would herein allege and state as follows:

### PARTIES

1. The Plaintiff is Alecia Teacher, an African American female residing in Oklahoma County, Oklahoma.

2. The Defendants are:

a) The State of Oklahoma ex rel. Oklahoma Department of Human Services ("DHS"), an entity doing business in Oklahoma County, Oklahoma; and

b) Calvin Kelley ("Kelley"), an individual employed as the Region III Deputy Director for DHS working in Oklahoma County, Oklahoma at all times relevant hereto.

### JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with Defendant DHS and is based on the following claims: (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) race discrimination and retaliation in violation of Title VII and 42 U.S.C § 1981; (3) violation of Plaintiff's

1

Fourteenth Amendment constitutional right to equal protection of the laws made actionable by 42 U.S.C. § 1983; (4) violation of the Oklahoma Anti-Discrimination Act in the form of age discrimination; and (5) violation of Plaintiff's First Amendment constitutional right to free speech.  Plaintiff's constitutional injuries were caused by state actors.

4. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiff's state law claims as they arise out of the same core of operative facts pursuant to 28 U.S.C. § 1367(a).

5. Plaintiff has exhausted her administrative remedies as to the above-listed claims by filing a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff timely filed an EEOC Charge on or about September 2, 2014. The EEOC issued a Notice of Right to Sue dated August 31, 2015 which was received by Plaintiff thereafter.  Plaintiff timely filed this Complaint within ninety (90) days of receipt of the EEOC Notice of Right to Sue.

6. Plaintiff also issued a Notice of Governmental Tort Claim on or about December 4, 2014.  Such notice was denied/deemed denied on or about March 9, 2015.  This Complaint has been filed within 180 days of such denial.

7. The Defendants are located in Oklahoma County and can be served in such county.  All acts complained of occurred in Oklahoma County.  Oklahoma County is located within the Western District for the United States District Courts of Oklahoma, wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

8. Alecia Teacher is an African American female born in 1964, making her over forty (40) years of age at all times relevant hereto.

9. Teacher began her lengthy tenure with DHS in or around October 1998 as a

Child Welfare Specialist ("CWS") II. She was steadily promoted over the next several years, holding the positions of CWS III, CWS Supervisor, Child Welfare Field Liason, and Child Welfare Programs Administrator. In or around October 2009, Teacher became an Assistant County Director reporting to County Director Jeri Poplin (White Female).

10. Throughout her tenure, Teacher's job performance was satisfactory, if not excellent. Teacher received no discipline. And, she was rated as meets or exceeds standards on her performance evaluations. In fact, on her most recent performance evaluation issued in or around June 2012, Teacher was given an overall exceeds standards rating by Poplin.

11. In or around October 2012, a reorganization occurred within the Child Welfare Division for Region III (Oklahoma County). Calvin Kelley (White Male) became the Director for Region III. Teacher applied for and was selected as a District Director reporting to Kelley. Five (5) other Region III District Directors were hired during this time.

12. Thereafter, Kelley made statements indicating that Teacher was not his choice as a District Director. And, Kelley's communications with Teacher were routinely negative and condescending. Other similarly-situated non-Black employees informed Teacher that they did not experience the same kind of communication from Kelley.

13. Teacher observed that Kelley spoke in a condescending manner to other female employees. She did not observe Kelley speaking to male employees in the same manner.

14. In her role as a District Director, Teacher oversaw an investigation unit responsible for investigating referrals (i.e., reports of possible child abuse or neglect) and a prevention unit responsible for writing safety plans allowing children to safely stay in their homes rather than be taken into DHS custody. Each unit had multiple child welfare workers reporting to a supervisor, who in turn reported to Teacher.

15. In or around September 2013, Region III began an initiative to reduce the

amount of backlog cases in investigations. On or about September 23, 2013, Kelley sent Teacher an email identifying the investigators reporting to her whom were struggling with backlog. Kelley's email told Teacher to "stop talking and start acting" with regard to closing cases and further stated that he would not allow the region to become burnt out so that "slackers [could] keep slacking." Teacher responded that her staff was working incredibly hard to meet deadlines, however, they would not close any referral that left the safety of Oklahoma children unresolved.

16. Teacher forwarded this e-mail correspondence to Kelley's supervisor, Child Welfare Director Deborah Smith (White Female).

17. That afternoon, Teacher met with Kelley for a routine monthly conference. During the meeting, Kelley chastised Teacher for sending his email to Smith. Kelley further stated that "another complaint" had been filed against Teacher by an employee. Teacher told Kelley she did not understand why an employee filed a complaint against her, and she was not aware of any prior complaints. Kelley told Teacher that she was the "wrong color" and "just too smart" and people did not like this about her. He further insinuated this may make it difficult to advance further in her career with DHS. Teacher told Kelley that this statement was incredibly inappropriate, to which Kelley responded "that's just how it is."

18. Thereafter, Teacher reported Kelley's comments to Smith. Smith told Teacher such comment about her color was highly inappropriate and she would address the issue with Kelley. Smith further stated the alleged "complaint" Kelley received about Teacher was unfounded following interviews with Teacher's staff, thus, Kelley was not supposed to address it with Teacher.

19. Thereafter, Teacher was successful in significantly reducing backlog in her department. In fact, Kelley asked Teacher to assist another district director in reducing

backlog based on her success.

20.     Following this backlog initiative, Teacher observed other district directors making decisions that placed children at risk for the sake of reducing backlog. Teacher voiced disagreement with these decisions when she believed a child was being placed in substantial risk.

21.     One of these events took place in or around March 2014. In this instance, Teacher's Prevention Supervisor asked Teacher to review a safety plan submitted by an investigator reporting to District Director Linda Voth (White Female). The plan indicated that the child, who was under the age of five (5), was in the custody of the mother. Both the mother and a grandparent living in the home were known drug users. The plan stated that the mother was required to present the child at a neighbor's house weekly to show that the child was being cared for, and the neighbor would be responsible for contacting DHS with any concerns. However, the neighbor was suffering from mental illness, including agoraphobia (fear of leaving the home).

22.     Teacher found this plan to be highly inappropriate and in no way ensured the child's safety. Thus, Teacher spoke with Voth about the placement, notifying her that the child was at risk under the plan. Voth insisted that the safety plan was appropriate, but said she would speak with Kelley about the plan as well. Thereafter, the plan was implemented as originally submitted.

23.     Regardless, Teacher continued to speak out and question DHS decisions made for the sake of reducing backlog but which placed the children at risk. In fact, Teacher spoke with an investigator at the Oklahoma Commission for Children and Youth ("OCCY") regarding her concerns that Region III decisions, including but not limited to inappropriate safety plans, were placing children at risk.

24.     In or around May 2014, Kelley proposed a change to the way the region

handled referrals made during the overnight shift. Specifically, District Directors were told to decide whether night referrals would be passed to a day shift investigator, rather than night shift staff carrying a case load. Teacher's concerns (which she discussed openly) were that her day shift investigators were overworked, and over large caseloads could result in children and their caretakers not having proper oversight, as DHS is tasked with providing. This places Oklahoma children in a dangerous abuse or neglect situation that could be avoided if not for the DHS workers' heavy caseloads. Regardless of these concerns, the change in procedure was implemented such that the night shift did not retain a caseload.

25. On or about June 18, 2014, Teacher was terminated by Kelley. Kelley told Teacher that she could resign in lieu of termination. Kelley further stated that Teacher was an at-will employee, thus, he was not required to provide Teacher with a reason for termination.

26. Teacher's termination was motivated by her race, gender and age, and in retaliation for her protected complaints and reports of unsafe conditions, which were made as a private citizen on a matter of public concern.

27. Upon information and belief, Teacher was replaced by a significantly younger, non-Black male.

28. As a result of the foregoing, Teacher has suffered injuries as identified below.

### COUNT I - Title VII (Race)

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

29. This count goes against Defendant DHS.

30. The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of race discrimination and retaliation.

31. Plaintiff is entitled to relief under Title VII because she is Black, was qualified

6

for her job, was terminated, and her position was not eliminated after her termination. And, she was terminated in retaliation for her complaint regarding Kelley's comments regarding her race.

32. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

### COUNT II - 42 U.S.C. § 1981

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

33. This Count goes against Defendant Kelley.

34. The matters alleged above constitute violations of 42 U.S.C. § 1981 as amended by the Civil Rights Act of 1991 and made actionable by 42 U.S.C. § 1983 in the nature of race-based discrimination and retaliation.

35. Plaintiff is entitled to relief under § 1981 because she is Black, was qualified for her job, was terminated, and her position was not eliminated after her termination. And, she was terminated in retaliation for her complaint regarding Kelley's comments regarding her race.

36. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and non-pecuniary losses.

37. Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages against Defendant Kelley as provided by the Civil Rights Act of 1991.

### COUNT III - Title VII (Gender)

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

38. This count goes against Defendant DHS only.

39. The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964, in the nature of gender discrimination.

40. Plaintiff is entitled to relief under Title VI because she is female, was qualified for her job, was terminated, and her position was not eliminated after her termination.

41. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

### COUNT IV - 42 U.S.C. § 1983 (Equal Protection)

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

42. This count goes against Defendant Kelley only.

43. Defendant Kelley acted under the color of his authority in a manner which deprived Plaintiff of her constitutional right to equal protection. Defendant Kelley took such actions against Plaintiff due to her membership in a protected class, including but not limited to her gender, race and age. Such actions are in violation of Plaintiff's Fourteenth Amendment rights which were clearly established at the time of the actions in question.

44. Defendant Kelley had final policy-making authority to carry out Plaintiff's termination.

Therefore, Defendant Kelley is liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

45. The actions listed above have caused a physical, mental and emotional injury to the Plaintiff in an amount to be determined by the jury.

46. To the extent that the actions of any individual Defendant are deemed willful or deliberately indifferent, then punitive damages are available, and should be assessed

against each such person.

## COUNT V - Age

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

47. This count goes against Defendant DHS only.

48. The matters alleged above constitute violations of the Oklahoma Anti-Discrimination Act in the form of age discrimination.

49. Plaintiff is entitled to relief under the OADA because, at all times relevant to this action, she was over the age of forty (40), was satisfactorily performing her job, she was terminated, and she replaced by a person significantly younger than her.

50. As damages, Plaintiff has suffered lost earnings, past and future, liquidated damage, and equitable and compensatory damages allowed by the OADA, including attorney's fees and costs.

## COUNT VI - First Amendment Violation

For her sixth cause of action, Plaintiff incorporates all prior allegations and further allege and state as follows:

51. This count goes against Defendant Kelley.

52. Defendant Kelley was acting under the color of his authority in a manner which deprived Plaintiff of her constitutional right to the freedom of speech. The actions taken against Plaintiff were the result of decisions made by representatives of DHS with final policy-making authority and/or through an official policy or custom.

53. The matters alleged above were in violation of Plaintiff's First Amendment right to the freedom of speech which was clearly established at the time of the actions in question. Plaintiff's comments as stated herein constitute protected comments on matters of public concern, including but not limited to Plaintiff's opposition to DHS initiatives that did

not serve the best interests of Oklahoma children. The actions of the Defendant were in deliberate indifference to the constitutional rights of Plaintiff. Therefore, the Defendant is liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

54. The matters alleged above represent violations of Plaintiff's rights under the First Amendment which have caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

55. Because the actions of the individual Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages against the individual Defendant.

## COUNT VII - *Burk* Tort

For her seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

56. This Count goes against Defendant DHS.

57. The acts above-described also constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

58. As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

## PRAYER

**WHEREFORE THE PLAINTIFF** prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and award actual damages, compensatory damages,

liquidated damages, punitive damages against the individual, together with any appropriate equitable relief, pre- and post-judgment interest, costs and attorney's fees.

      **RESPECTFULLY SUBMITTED THIS 3rd DAY OF SEPTEMBER, 2015.**

s/Jana B. Leonard
**JANA B. LEONARD, OBA# 17844**
**LAUREN W. JOHNSTON, OBA # 22341**
**LEONARD & ASSOCIATES, P.L.L.C.**
**8265 S. Walker**
**Oklahoma City, OK 73139**
**(405) 239-3800     (telephone)**
**(405) 239-3801     (facsimile)**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

liquidated damages, punitive damages against the individual, together with any appropriate equitable relief, pre- and post-judgment interest, costs and attorney's fees.

**RESPECTFULLY SUBMITTED THIS 3rd DAY OF SEPTEMBER, 2015.**

s/Jana B. Leonard
**JANA B. LEONARD, OBA# 17844**
**LAUREN W. JOHNSTON, OBA # 22341**
**LEONARD & ASSOCIATES, P.L.L.C.**
**8265 S. Walker**
**Oklahoma City, OK 73139**
**(405) 239-3800     (telephone)**
**(405) 239-3801     (facsimile)**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**